UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON K. MYERS,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>A. HEDGPETH, warden,<br><br>　　　　Respondent.<br>_____/ | No. C 12-1501 SI (pr)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY** |

**INTRODUCTION**

Aaron Myers filed this *pro se* action seeking a writ of habeas corpus under 28 U.S.C. § 2254. The matter is now before the court for consideration of the merits of the habeas petition. For the reasons discussed below, the petition will be denied.

**BACKGROUND**

Procedural History

Myers was charged with one count of murder, Cal. Penal Code § 187, four counts of attempted murder, Cal. Penal Code §§ 664/187 and one count of shooting at an occupied motor vehicle, Cal. Penal Code § 246. On May 28, 2009, a Contra Costa County Superior Court jury found Myers guilty of the lesser offense of voluntary manslaughter, four counts of the lesser offense of attempted voluntary manslaughter and shooting at an occupied motor vehicle. Clerk's Transcript (CT) at 467-79. The jury also found that Myers had personally and intentionally discharged a firearm causing great bodily injury or death to two victims. CT at 480. He was sentenced to a determinate term of 11 years and eight months and an indeterminate term of 25

years to life. CT at 552-55.

Myers appealed. The California Court of Appeal affirmed the conviction and modified the determinate term, and the California Supreme court denied his petition for review.

Myers then filed this action, seeking a writ of habeas corpus. On July 7, 2012, this court issued an order to show cause on the claims that: (1) Myers' Sixth and Fourteenth Amendment rights to due process and to have the jury determine his guilt were violated because the trial court failed to *sua sponte* provide a jury instruction regarding his unreasonable belief in the need for self-defense; and (2) his right to due process was violated by the jury instructions on conspiracy and aiding and abetting because they were not supported by the evidence, and allowed a conviction without finding causation. Respondent filed an answer and Myers filed a traverse.

The Crime

The following factual background is taken from the order of the California Court of Appeal.

> Christopher Robinson testified that on the evening of April 3, 2008, he was a passenger in a car with Rhonda White, Donnaray Allison, Sean Wydermyer and Ashley Davis. White and Allison were in the front seat and the other three were in the back seat. Robinson sat behind White, who was driving. Robinson testified that White was driving the speed limit and was not driving in an erratic or strange manner, although all of the occupants of the car were drinking and smoking marijuana. No one in White's car had a gun.
>
> As they were driving in the middle lane of Interstate 80 between Albany and Pinole, White waved at another car, commenting, "There goes Aaron and them." White did not tailgate, nor did she swerve while driving. Allison said, "Don't speed up on the car," but waved both hands, making "peace signs" with his fingers. To Robinson's knowledge, no one in White's car had made any sort of threatening gestures. All of the windows were up so that no one had even put a hand outside of the car. Suddenly someone in the other car began firing at White's car. Robinson recognized the other car as belonging to defendant and his girlfriend, Tiana Sheppard.
>
> When the shooting began, Robinson put his head between his knees and crouched toward the floor of the car. When he looked up, Allison was "slumped in his seat" and White "was just holding the steering wheel breathing hard." Wydermyer reached into the front of the car and brought the car to a stop. By the time Robinson and the others got out of the car, White had died. Allison was unable to get out of the car because of his injuries.
>
> Robinson told the police that defendant, Brian Young (whose nickname was Bow Wow), and Sheppard were in the car that fired on him and his friends.

Allison testified that he had known defendant and Sheppard for many years. White had purchased the car she was driving "a month or more" prior to the day of the shooting and defendant and Sheppard had seen the car prior to that time. Allison testified that White was not driving erratically and did not appear drunk. He recognized Sheppard's car when it neared White's car and saw Sheppard and defendant in the car. Allison recalled commenting, "There go Hersh [defendant's nickname] and them." He raised one of his hands and made a "peace sign" gesture towards Sheppard's car. "Within seconds" defendant started shooting and then Young also began to shoot. Allison was shot seven times and remained in the hospital for two months, undergoing four or five surgeries.

Tiana Sheppard testified that she and defendant had been dating for eight years and have a child together. She and White had been friends since 2002, and she had known Allison even longer. Around 9:00 p.m. on the night of the shooting she was driving her car with defendant in the passenger seat and Young in the back seat. Defendant had a backpack and Young had a duffle bag, but Sheppard did not see that either had a gun. She stated that as they were driving on Interstate 80, a "car pulled up along the side of me, and it startled me because it came up so quickly. When I noticed the car, I looked out the window to see who it was, and I couldn't see any faces.... I'm scared because we're in Richmond and I don't know who this is." Defendant looked toward the other car and asked Sheppard who was in it. "And before I can say, 'I don't know,' [defendant] pulled me out of the way.... [¶] ... [¶] After that I heard gunfire. I didn't know which direction the shooting was coming from at all." She could feel warmth from a gun being fired near her neck. The gunfire lasted a few seconds, then she felt the car hit something. She sat up and realized she had a flat tire and pulled to the side of the road. Defendant was asking, "Who was that?" but she did not see a gun. The three got out of the car and walked to a local high school. Sheppard remained at the school and called a friend to pick her up, while defendant and Young continued on foot. Sheppard and her friend later picked up defendant and Young and drove to Sheppard's apartment. En route, they passed the scene of the shooting, which was cordoned off. The friend wondered aloud what had happened and said that she heard White had been injured. Sheppard turned herself in to the police on April 11.

Sheppard testified that defendant had been the victim of a shooting in February 2008. When he was released from the hospital he moved in with her because he did not feel safe returning to the neighborhood where he lived previously. They discussed the fact that both of them had been threatened. On the night of the shooting, they had discussed how dangerous it was to return to defendant's former neighborhood. However, defendant's father, who had surgery in January 2008, still lived in a housing development in the area called "Parchester Village" and wanted to see his son frequently. In order to visit, Sheppard and defendant would go after dark and climb over the wall that surrounds the community, then cut through various backyards to reach defendant's father's house.

. . . .

On April 3, defendant's father called him several times, and defendant wanted to visit him. Defendant called Sheppard, who picked him up. He took his .380 caliber gun with him, but concealed it from Sheppard. As they were driving on the freeway, defendant saw a car in his peripheral vision just as Sheppard said, "Babe, who was that? Whoa. Watch out." The other car "swooped up fast." To defendant, this indicated that "something was fitting to happen. Shooting was fitting to happen. Like I had basically got caught slipping. They identified the car and got hit. [¶] Q.... [¶] A. Slipping means we was looking for you and we found you, got you." When the car pulled alongside

defendant's vehicle, all defendant could see was "heads. That's all I seen. No females. I thought I seen all males. I seen dreads or dreadlocks.... [¶] Q.... [¶] A. I seen dreads, and then the next thing I seen is the hands go up. When I seen the hands go up, I interpreted that [as] a rifle from being in the streets. [¶] Q.... [¶] A.... I grabbed Tiana Sheppard out the way before she get hit and before she was killed." He then "fired about four or five times." After firing, defendant lowered his head and stayed down. He heard other gunshots and believed he was being fired at. It was not until he arrived home that he learned he had killed White and injured Allison. Defendant testified that he never would have intentionally harmed White or Allison. Defendant subsequently surrendered to the police in Las Vegas.

Detective Michael Pistello of the Pinole Police Department testified that he spoke with Wydermyer, Robinson and Davis the night of the shooting. Neither Robinson nor Wydermyer wore their hair in dreadlocks on the night of the shooting; both had short, curly hair at the time. Wydermyer told Pistello that he heard loud gunshots and that he heard two different guns fire. Pistello interviewed Sheppard on April 11, and she told him that she heard gunshots but did not know where they were coming from. She also told him that after the three got out of the car and started up the hill on foot, Young turned and she saw a rifle hanging from his left shoulder, under his coat. Pistello searched Sheppard and defendant's apartment and found a bullet proof vest and a holster.

. . . .

At trial, as indicated above, defendant acknowledged firing several shots from his .38–caliber pistol at the car in which the victims were riding, but he contended that the only bullets that caused any harm were from the more powerful AK–47 fired by Young. There was considerable testimony concerning ballistics and the bullet fragments that were found in the car and removed from the bodies of the victims. There was no evidence establishing that a bullet from defendant's gun hit White and at most there was some evidence that one of the several bullets striking Allison may have been from his .38–caliber pistol. The jury was instructed on several theories under which defendant could be found guilty of the charged offenses on the assumption that the evidence did not establish that a bullet from his gun hit either victim. On appeal, the Attorney General contends the evidence does not preclude the possibility that at least one shot from defendant's gun struck White, but his argument rests primarily on the contention that the instructions were such that defendant was properly convicted regardless of which bullets inflicted the injuries. Remarks of the trial judge at the time of sentencing suggest that the court also viewed the conviction in this light. We shall similarly assume for the purpose of this appeal that the evidence is insufficient to prove that either victim was struck by a bullet from defendant's gun.

The court instructed the jury that defendant could be found guilty on the theory of concurrent causation, as an aider and abettor, or on a conspiracy theory.

*People v. Myers*, 2011 WL 1203609, at *1-4 (Cal. Ct. App. March. 30, 2011) (citations and footnote omitted)**.**

///

///

///

4

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in Contra Costa County, California, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. *See* 28 U.S.C. § 2254(b), (c). The parties do not dispute that the state judicial remedies were exhausted for the claims in the petition.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism And Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

5

law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

## DISCUSSION

A.  <u>Unreasonable Self Defense</u>

Myers contends that his due process rights were violated when the trial court failed to *sua sponte*[1] provide a jury instruction regarding his unreasonable belief in the need for self-defense with respect to the charge of discharging a firearm at an occupied vehicle, Cal. Penal Code § 246.

<u>Standard</u>

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings. *See Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991). Federal habeas relief is available for instructional error only if the error "'so infected the entire trial that the resulting conviction violate[d] due process.'" *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). The United States Supreme Court has "long interpreted this standard of fairness [contained in the Due Process

---

[1] Trial counsel did raise an issue regarding unreasonable belief for self defense with respect to the aiding and abetting instruction on the murder charge, but made no request for any instruction in connection with the § 246 offense.

6

1  Clause] to require that criminal defendants be afforded a meaningful opportunity to present a
2  complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). Accordingly, a
3  defendant generally "is entitled to an instruction as to any recognized defense for which there
4  exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*,
5  485 U.S. 58, 63 (1988). However, failure to instruct on a defense theory can be error only if "the
6  theory is legally sound and [the] evidence in the case makes [the theory] applicable." *Clark v.
7  Brown*, 450 F.3d 898, 904–05 (9th Cir. 2006) (citations omitted) (internal quotations omitted).

Analysis

The following description of Myers' claim is taken from the California Court of Appeal's opinion:

> Defendant contends the trial court erred by failing to instruct the jury that an honest but unreasonable belief in the need to defend himself—the so-called *Flannel* defense (*People v. Flannel* (1979) 25 Cal.3d 668[limited on unrelated grounds by statute as described in *In re Christian S.* (1994) 7 Cal.4th 768, 777–778].)—was a defense to the charge of violating section 246, discharging a firearm at an occupied vehicle. Defendant relies on *People v. McKelvy* (1987) 194 Cal.App.3d 694, in which the court held that, "Although the 'malice' required for the offense of mayhem differs from the 'malice aforethought' with which *Flannel* was concerned, it is equally true in both cases that the requisite state of mind is inconsistent with a genuine belief in the need for self-defense. One who truly believes there is a need for self-defense cannot be said to act with intent to 'vex, injure or annoy' and may be found guilty of no more than an assault or battery. Where there is evidence to support such a lesser included offense, the effect of instructing the jury that an honest but unreasonable belief negates malice has a similar effect in the context of mayhem as in that of murder, reducing the severity of the offense without completely absolving the defendant of criminal responsibility." (*Id.* at ¶. 702–703, fn. omitted.)
>
> However, the "unreasonable self-defense" doctrine that originated with *People v. Flannel* is not a true defense, nor has any case since *McKelvy* applied the *Flannel* doctrine outside of the context of homicide. "[A]s our Supreme Court has made clear, '. . . "unreasonable self-defense" is . . . not a true defense; rather it is a shorthand description of one form of voluntary manslaughter. And voluntary manslaughter, whether it arises from unreasonable self-defense or from a killing during a sudden quarrel or heat of passion, is not a defense but a crime; more precisely, it is a lesser offense included in the crime of murder. Accordingly, when a defendant is charged with murder the trial court's duty to instruct sua sponte, or on its own initiative, on unreasonable self-defense is the same as its duty to instruct on any other lesser included offense: this duty arises whenever the evidence is such that a jury could reasonably conclude that the defendant killed the victim in the unreasonable but good faith belief in having to act in self-defense.'" (*People v. Watie* (2002) 100 Cal.App.4th 866, 882.)
>
> The *Watie* court held that "no authority suggests that the nondefense of imperfect, or unreasonable, self-defense could apply in a prosecution for violation of section 246.

7

> Such a legal theory would be at odds with [the Supreme Court's] characterization of unreasonable self-defense as a species of voluntary manslaughter. Because there was no authority supporting application of unreasonable self-defense to a prosecution for violation of section 246, that theory of defense could not be considered 'a general principle of law' that was 'openly connected with the facts before the court,' and the trial court had no duty to instruct on that theory sua sponte." (*People v. Watie*, supra, 100 Cal.App.4th at p. 882; *see also People v. Sekona* (1994) 27 Cal.App.4th 443, 451–453 [declining to hold that *McKelvy* created a sua sponte duty to give *Flannel* instruction for crimes other than murder.]
>
> The jury was properly instructed that malice for the purpose of violating section 246 means "a wish to vex, annoy or injure another person, or an intent to do a wrongful act. This is different from, and should not be confused with, 'malice aforethought.'" The jury was also instructed that grossly negligent discharge of a firearm (§ 246.3, subd. (a)) is a lesser included offense of section 246, and that violation of that section requires only willful discharge of a firearm in a grossly negligent manner. Thus, although the court gave no pinpoint instruction stating explicitly that an unreasonable belief that one was under attack would negate the malice required to find defendant guilty of violating section 246, the instructions that were given permitted defendant to make that argument. Under the instructions that were given, defendant could have argued that his belief that he was being attacked, even if unreasonable, nonetheless negated any wish on his part to injure another person or do a wrongful act. In discussing the jury instructions with the court, defense counsel did mention his concern that the aiding and abetting instructions, CALJIC. No. 3.01 might be understood to preclude consideration of the *Flannel* issue in connection with the murder charge, but he made no request for any such pinpoint instruction in connection with the section 246 offense. Without deciding whether such an instruction would have been required if requested, the court clearly was under no sua sponte duty to offer such a pinpoint instruction. (*People v. Watie*, supra, 100 Cal.App.4th at p. 882; *People v. Estrada* (1995) 11 Cal.4th 568, 574 ["As to pertinent matters falling outside the definition of a 'general principle of law governing the case,' it is 'defendant's obligation to request any clarifying or amplifying instruction.'"].)

*People v. Myers*, 2011 WL 1203609, at *9-10.

The California Court of Appeal's rejection of Myers' claim was not contrary to, or an unreasonable application of, clearly established federal law as set forth by the Supreme Court. There is no Supreme Court authority that a trial court has a duty to *sua sponte* instruct the jury on a defense. As the state court noted, there is no authority under state law that an unreasonable belief in the need for self defense should apply to Cal. Penal Code § 246, as suggested by Myers. *See People v. Watie*, 100 Cal. App. 4th 866, 882 (2002).

California Penal Code § 246 states in relevant part: "[a]ny person who shall maliciously and willfully discharge a firearm at an inhabited dwelling house, occupied building, occupied motor vehicle . . . is guilty of a felony. . ." Myers argues that he lacked the malice to be guilty of § 246, thus a further instruction was required *sua sponte* by the court. However, the jury was

8

1  also instructed on the lesser included offense of grossly negligent discharge of a firearm, Cal
2  Penal Code § 246.3, which omits the references to "maliciously and willfully."[2] In essence, the
3  jury was provided an instruction substantially similar to what Myers has argued in this petition.
4  Regardless, the defense theory must be legally sound for the failure to instruct to be an error.
5  *Clark*, 450 F.3d at 904–05.  As state law does not even recognize this defense theory, and as a
6  jury instruction was not requested, there can be no constitutional violation.  *See Menendez v.*
7  *Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005) (any alleged error in the state court's
8  determination of what defenses were allowed by state law cannot form the basis for federal
9  habeas relief.).

10  Even assuming the trial court did err, any error was harmless, as Myers has failed to
11  demonstrate that the error violated due process and affected the verdict, especially considering
12  all the evidence presented, including Myers' testimony that he fired several shots at the other car.
13  He is not entitled to relief on this claim as the jury instructions were proper pursuant to state law
14  and regardless, the state court denial of this claim was not an unreasonable application of clearly
15  established federal law.

17  B.   Sufficiency of the Evidence

18  As noted above, the trial court instructed the jury that Myers could be found guilty on a
19  theory of concurrent causation, as an aider and abettor or on a conspiracy theory.  Myers argues
20  that his due process rights were violated by the jury instructions on conspiracy and aiding and
21  abetting because the instructions were not supported by the evidence and they prevented the jury
22  from considering his unreasonable belief in the need for self-defense.  It is difficult to discern
23  his exact argument, but the state courts found that each of these theories was appropriate and that
24  there was sufficient evidence to support the instructions and convictions.  Therefore, the court

---

[2] California Penal Code § 246.3 states: Except as otherwise authorized by law, any person who willfully discharges a firearm in a grossly negligent manner which could result in injury or death to a person is guilty of a public offense and shall be punished by imprisonment in a county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170.

9

1 will address the sufficiency of the evidence to warrant the instructions and the convictions and
2 Myers' contention that the jury instructions prevented the jury from considering his unreasonable
3 belief in the need for self-defense.

Standard

A general guilty verdict is constitutionally valid where the prosecution offered alternate theories of guilt and any of the theories was supported by sufficient evidence. *Griffin v. United States*, 502 U.S. 46, 56–60 (1991); *Turner v. United States*, 396 U.S. 398, 420 (1970). Merely giving an instruction which is not supported by the evidence is not a due process violation, *Griffin*, 502 U.S. at 55–60, because a jury is well-suited to determining whether there is any evidence to support an instruction, which is not true when an instruction is legally erroneous. Hence there may be a violation of due process when a trial court gives both a legally erroneous instruction and one which is not legally erroneous, but it is not a due process violation when one theory is supported by the evidence and one is not. In that situation, submission of an alternative theory which is not supported by the evidence does not violate due process. *See id.* at 59.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt, but rather determines whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1993). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. *See Jackson*, 443 U.S. at 324; *Payne*, 982 F.2d at 338. The reviewing court must presume that the trier of fact resolved any conflicts in the evidence in favor of the prosecution, and must defer to that resolution. *Jackson*, 443 U.S. at 326. To grant relief, therefore, a federal habeas court must

1 conclude that "the state court's determination that a rational jury could have found that there was
2 sufficient evidence of guilt, i.e., that each required element was proven beyond a reasonable
3 doubt, was objectively unreasonable." *Boyer v. Belleque*, 659 F.3d 957, 964–965 (9th Cir.
4 2011).

Analysis

Review of the trial record and state court opinions demonstrates that none of the instructions was legally erroneous; that each instruction and guilty finding was supported by the evidence; and that the state court opinion was not contrary to Supreme Court authority. Myers has failed to demonstrate any error, let alone a due process violation. The court will discuss each theory and the supporting evidence.

The following description of Myers' claim regarding aiding and abetting is taken from the California Court of Appeal's opinion:

> Defendant argues that "[t]here was no evidence of a plan or gang design . . . . Thus, there was no time to develop an awareness of his coparticipant's intentions and an intent to aid him in that purpose." "A person aids and abets the commission of a crime when he or she, (i) with knowledge of the unlawful purpose of the perpetrator, (ii) and with the intent or purpose of committing, facilitating or encouraging commission of the crime, (iii) by act or advice, aids, promotes, encourages or instigates the commission of the crime." (*People v. Cooper* (1991) 53 Cal.3d 1158, 1164.) "Aiding and abetting may be committed 'on the spur of the moment,' that is, as instantaneously as the criminal act itself." (*People v. Nguyen*, supra, 21 Cal.App.4th at p. 532.) "Whether defendant aided and abetted the crime is a question of fact, and on appeal all conflicts in the evidence and reasonable inferences must be resolved in favor of the judgment." (*People v. Mitchell* (1986) 183 Cal.App.3d 325, 329.) The evidence here was such that the jury reasonably could find that by firing his gun at the approaching car, defendant promoted, encouraged and, if he fired first, instigated the firing of the AK–47 by Young. While events transpired so quickly that there apparently was no opportunity for the two to discuss the situation before firing, the evidence supports the obvious inference that both knew what the other was doing and that defendant, by his own conduct, implicitly encouraged Young to continue shooting.

*People v. Myers*, 2011 WL 1203609, at *7.

In affirming the conviction on a theory of aiding and abetting, the state court discussed *People v. Hernandez*, 181 Cal. App. 4th 1494 (2010). In *Hernandez*, the defendant was the driver of a vehicle from which shots were fired by the passenger. As here, the defendant argued that "the jury could have convicted him without ever finding he knew [the passenger] actually

11

intended to shoot at another person and shared that intent." *Hernandez*, at 1499. The court rejected that argument, stating that an aider and abettor "must 'act with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense.' [Citation.] The jury must find 'the intent to encourage and bring about conduct that is criminal, not the specific intent that is an element of the target offense . . . .'" *Id.* at 1501. Thus the jury was properly instructed on aider and abettor liability even though the defendant asserted that he did not believe the passenger was going to shoot and in fact told him not to do so. *Id.* at 1498, 1502.

So here, Myers has failed to demonstrate that the aiding and abetting instruction was legally erroneous or that there was insufficient evidence to support the jury verdict. Substantial evidence demonstrated, and Myers even testified, that he fired his gun several times at the other car. His challenge to aider and abettor liability is effectively a challenge to the state court's reliance on *Hernandez*. However, a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam). A habeas petitioner may not transform a state law issue into a federal one merely by asserting a due process violation. *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996). Similarly, a petitioner is not permitted to restate his state law claim as a federal constitutional challenge to the sufficiency of the evidence.

State law provides that aiding and abetting may be committed instantaneously with the criminal act, *People v. Nguyen*, supra, 21 Cal. App. 4th at 532; that there was no evidence of a plan or design to fire upon the other car will not warrant habeas relief. Petitioner testified that he fired several bullets at the car carrying the victims, and a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. As the state court noted, while Myers and the co-defendant may not have discussed the situation together before opening fire, the evidence points to an obvious inference that each knew what the other was doing, and that Myers' firing the gun implicitly encouraged the co-defendant to continue shooting. Myers

1  may not agree with the state's aider and abettor law, but he has failed to state a federal claim
2  and is not entitled to relief on this issue.
3        Nor was the state court's decision regarding the conspiracy instruction or the sufficiency
4  of the evidence with respect to conspiracy an unreasonable application of federal authority. The
5  state court held:

> The same evidence that supports the aider and abettor instructions supports the instruction on conspiracy. "The elements of conspiracy may be proven with circumstantial evidence, 'particularly when those circumstances are the defendant's carrying out the agreed-upon crime.' [Citations.] To prove an agreement, it is not necessary to establish the parties met and expressly agreed; rather, 'a criminal conspiracy may be shown by direct or circumstantial evidence that the parties positively or tacitly came to a mutual understanding to accomplish the act and unlawful design.'" (*People v. Vu* (2006) 143 Cal.App.4th 1009, 1024–1025.)

*People v. Myers*, 2011 WL 1203609, at *8. Similar to aiding and abetting, conspiracy does not require that the parties have met and expressly agreed upon a course of action but can be shown by direct or circumstantial evidence of a mutual understanding to accomplish the act. *People v. Vu*, 143 Cal. App. 4th 1009, 1024–1025 (2006). As noted in the state court opinion, the same evidence which supports the aiding and abetting charge was also sufficient to support conspiracy. For the same reasons set forth above concerning aiding and abetting and the evidence presented at trial, there was sufficient evidence to support the conspiracy instruction and the ensuing guilty findings.

      Myers also argues that the instructions on aiding and abetting and conspiracy deprived him of the right to have the jury consider his unreasonable belief in the need for self defense with respect to Cal. Penal Code § 246, discharging a firearm at a vehicle. He theorizes that because he was found not guilty of murder, the jury did not find that he acted with malice aforethought. Therefore, he must have been found guilty of Cal. Penal Code § 246 based on his co-defendant's actions. Myers contends that the jury could not have found his co-defendant acted maliciously and willfully because the co-defendant did not testify. This argument was addressed by the state court.

> Defendant also argues that because [co-defendant] Young did not testify, there was no evidence of his mental state and therefore that there was no evidence to support a finding that Young had the requisite intent to violate section 246. Thus, defendant assertedly

13

> could not have been guilty of aiding and abetting the violation of section 246 because there was insufficient evidence to prove that Young committed that crime. Section 246 provides that "Any person who shall maliciously and willfully discharge a firearm at an . . . occupied motor vehicle . . . is guilty of a felony . . . ." "Section 246 is a general intent crime. [Citation.] As such, the term 'maliciously' in section 246 is defined by Penal Code section 7, item 4, as 'a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law.'" (*People v. Watie* (2002) 100 Cal.App.4th 866, 879.)
>
> "Section 246 does not require a specific intent 'to do a further act or achieve a future consequence' beyond the proscribed act of shooting 'at' an occupied building or other proscribed target." (*People v. Overman* (2005) 126 Cal.App.4th 1344, 1357.) "'As for all general intent crimes, the question is whether the defendant intended to do the proscribed act.' [Citation.] 'In other words, it is sufficient for a conviction if the defendant intentionally did that which the law declares to be a crime.' [Citation.] In the words of the statute, section 246 is violated when a defendant intentionally discharges a firearm 'at . . . inhabited dwelling house, occupied building . . . .'" (*Id*. at p. 1356.) . . .
>
> The evidence here was plainly sufficient to show that Young intended to shoot at the occupants of the approaching car, violating section 246, and therefore sufficient to establish that defendant aided and abetted the commission of that offense. (*See People v. Hernandez*, supra, 181 Cal.App.4th at ¶. 1500–1502.)

*People v. Myers*, 2011 WL 1203609, at *8.

Assuming *arguendo* that the jury found Myers guilty of Cal. Penal Code § 246 based only on his co-defendant's actions, he is not entitled to relief.[3] A review of the record indicates there was sufficient evidence for the jury to infer the co-defendant's intent to maliciously and willfully discharge a firearm at an occupied motor vehicle, when he fired on the other vehicle multiple times with an AK-47 assault rifle. Myers' contention that evidence as to an individual's mental state can only be proven by that individual's testimony is meritless. He again attempts to argue a theory of honest but unreasonable self defense as to Cal. Penal Code § 246, which is foreclosed by state law. *People v. Watie*, 100 Cal. App. 4th 866, 882 (2002).

In this federal petition, Myers challenges two of the three theories presented to the jury, but did not challenge the concurrent causation theory. On appeal, the state court found sufficient evidence to convict on the charged offenses based on all three theories. The state court also noted that even if there was an error in the instructions for one of the theories, reversal is

---

[3] As the jury found true against Myers the enhancement for personal use of a firearm causing great bodily injury or death, it appears he was personally found guilty of Cal. Penal Code § 246 and not based on his co-defendant's actions.

14

required only if the jury relied solely on the factually unsupported instructions. *People v. Campbell*, 25 Cal. App. 4th 402, 408 (1994). After also affirming on the concurrent causation theory, the state court noted, "[h]ere, there was ample evidence to support the verdict on a theory of concurrent causation. The fact that the jury found true the allegation under section 12022.53, subdivision (d) that defendant personally and intentionally discharged a firearm proximately causing injury and death is a strong indication that the jury did not rely on a theory of vicarious liability in convicting defendant." *People v. Myers*, 2011 WL 1203609, at *9.

Myers has failed to demonstrate that any of the theories of guilt presented to the jury were legally erroneous or that there was insufficient evidence to support the convictions. However, even if there was insufficient evidence to support aiding and abetting or conspiracy, the state court found sufficient evidence of concurrent causation, which Myers has not challenged and which alone could support the conviction. Moreover, even if there was an error, Myers has also failed to show that the error was not harmless and he would be entitled to relief. *See Hedgpeth v. Pulido*, 555 U.S. 57, 60-62 (2008) (holding that instructing a jury on multiple theories of guilt, one of which is legally invalid, is subject to harmless error review). For all these reasons, this claim is denied.

C.   No Certificate Of Appealability

A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

///

**CONCLUSION**

The petition for writ of habeas corpus is denied on the merits.

The clerk shall close the file.

IT IS SO ORDERED.

DATED: June 17, 2013

SUSAN ILLSTON
United States District Judge